[File No. 6901]

ALBERT T. SCHMIDT, Respondent, v. NORTH DAKOTA WORKMEN'S COMPENSATION BUREAU, Appellant.

(13 NW(2d) 610)

246

Opinion filed December 30, 1943. Rehearing denied April 4, 1944

*Alvin C. Strutz,* Attorney General, and *P. B. Garberg,* Assistant Attorney General, for appellant.

*J. K. Murray,* for respondent.

Burr, J. On the 19th of August, 1940, plaintiff applied to the bureau for compensation because of alleged injuries received by him in the course of his employment. In this application known as #100792 he stated he was suffering from the injurious effect of over-exertion and an "impact caused by vibration of heavy machinery." He termed this a disease and said it was incurred between August 18, 1937, and

June 30, 1940. The application was presented as a separate and distinct claim, independent of all others theretofore presented to the bureau. The application was accompanied by a report made by a physician which stated applicant had "pain in the abdomen, chest, and back upon exertion, which condition began about August 18, 1937, after heavy lifting and exertion. Aggravated again about June 30, 1940." Physician stated he could not state definitely that the disability was due entirely "to this injury."

The application was received August 20, 1940. On the 16th of September the bureau made its findings and conclusions to the effect that "the alleged disability is not due to a disease proximately caused by the employment," and dismissed the application.

In November of that year, plaintiff appealed to the district court and in his complaint alleged that between August 18, 1937, and June 20, 1940, he was employed by the state highway department and required to do heavy work and heavy lifting, in operating "heavy motorized machinery and equipment of said highway department," and in lifting this machinery and objects he overstrained and overexerted himself; "that the motorized machinery of said Highway Department caused tremendous vibration and impact on the appellant's physical system and body; that during the warm periods of the year, said motors of said machinery became extremely hot, thereby heating plaintiff's body and assisting in the creating of blood presure higher than normal, thereby seriously injuring the plaintiff's heart; that the plaintiff in the performance of his duties was required to operate road machinery including heavy snowplows in the winter time, in extremely cold weather; that in the performance of appellant's duties, he became severely chilled at various times, and incurred serious colds and bronchial trouble; that in the operation of said highway machinery in the winter time, petitioner was required to go out in the cold,—thereby incurring extreme chills, which affected his heart and other internal organs of his body, including his liver and kidneys, gall bladder and heart; that by reason of the aforesaid, appellant was forced to quit his employment on the 20th day of June 1940, and he has been under a doctor's care ever since and will be a cripple and invalid for life; that the appellant's disease, sickness and physical condition, as aforesaid,

were and are approximately caused by appellant's type and character of work and employment aforementioned."

The answer denies "that the injuries and sickness of appellant was incurred in the course of his employment; defendant and respondent further alleges that the said claim was based only and alone on the contention that "overexertion and injurious impact caused by vibration of heavy machinery" was the proximate cause of the disability from which the appellant suffered, and that a copy of the said claim filed by the said appellant is hereto attached and made a part of this answer as though set forth at length herein." The answer further denies that the plaintiff was injured in the course of his employment and alleges his disability is due to a disease not proximately caused by his employment.

Almost two years elapsed before the case was finally heard in the district court. October 9, 1942, the court rendered a memorandum opinion, holding with the plaintiff. On October 30, 1942, defendant gave notice of motion to reopen the case for the taking of further testimony. This motion to reopen was supported by affidavits wherein it is stated: That the sole ground for the application presented to the bureau was a disease which had been incurred sometime between August 18, 1937, and June 20, 1940, and that this disease was a disease of the heart caused by the vibration of heavy machinery and by overexertion in operating the machinery; that plaintiff never claimed any damages for the injury alleged to have been suffered on May 8, 1940; that the trial of this issue in the district court was had without any presentation of the claim to the bureau; that such claim could not now be presented to the bureau because of the lapse of more than one year from the time that the alleged injury had occurred and that because of the lapse of such time the bureau would have no jurisdiction to hear and determine the issue arising over the alleged injury.

The record, so far as this court can ascertain, shows that upon the hearing before the district court the plaintiff relied entirely upon an alleged injury suffered on May 8, 1940.

At the trial defendants had objected to proffered testimony on the ground that such matter was not "within the issues of this lawsuit— This is an appeal from a determination of the Workmen's Compensation Bureau, and must, therefore, be based entirely on the claim filed before the Bureau. The original claim is here before me, and here is

a copy attached to the answer. The original claim as filed alleges that the disability was caused by over-exertion and impact caused by vibration of heavy machinery. Therefore, the only testimony in issue—the only matter in issue in this appeal is the disability caused by such over-exertion and such impact or vibration of heavy machinery." The court denied the motion upon hearing and on December 22, made findings of facts and order for judgment in favor of the plaintiff, judgment being entered December 28, 1942.

Incidentally we may state that if the legislative intent to secure speedy, sure, and certain relief to employees is not always attained, the fault often lies with the employees themselves and not in every occasion with the agencies created by the state to hear and determine the complaints. The bureau heard and determined the entire issue in less than four weeks. The applicant did not finish the hearing in the district court on his appeal until more than two years thereafter, and it was almost a year after that before the appeal was docketed in this court.

The record shows: That on November 23, 1937, the plaintiff applied to the bureau for compensation basing the same upon an injury which he said he received while hauling steel railing on the twelfth of that month. The bureau found that in doing so he had sustained an "injury to abdominal region" and allowed him compensation for all the time he was disabled.

On July 18, 1938, he applied to the bureau for compensation stating that while lifting a heavy rock and removing it from the road he felt a sharp pain in his back and the nature of his injury was an injury to his "back and perhaps some internal injury." He was in the hospital for some time. The bureau allowed him compensation and his hospital expenses.

In November, 1938, plaintiff made application for compensation for an injury received while hauling clay, alleging he had slipped and fallen on his back and hurt his back, that while dumping clay on the roadbed he was thrown from the back of the truck. The bureau allowed him compensation therefor, and his medical expenses.

On May 10, 1940, plaintiff applied for compensation because of an alleged injury he said he received on May 9th, while operating machin-

ery, his allegation being that while he "was leaning over back of tractor seat pulling a rope to trip scraper while tractor was going over dump pile causing tractor to buck in rear; this caused tractor seat to strike operator on right side, thereby fracturing two ribs." He stated in this application that he ceased work at noon of May 9 and in his final report thereon stated he returned to work on June 17. The bureau heard that application known as #98593 and allowed the defendant compensation therefor and paid his hospital bill and medical expenses. This award was made on June 21, 1940, and thereafter, in July of 1940, the "bureau allowed the claimant a supplemental award for compensation."

It will be noted that nothing was said in that application about the alleged accident said to have occurred the day before—the accident which is the real subject of inquiry on this appeal. In all of these cases he was injured in the course of his employment by the highway department, and all were for injuries received during the period set forth in the pending application #100792. And now, two months after the close of Claim #98593, he files #100792.

It seems to be plaintiff's theory, that on May 8 something "cracked" in his chest; he did not apply for compensation; on May 9 he broke two ribs and applied for and received compensation therefor, that the accident on May 8 caused a heart condition not included in or a part of the application based on the May 9 application. The factual answer is there were not two accidents—one on May 8, and another on May 9.

The transcript of testimony offered by the plaintiff in this case at bar on the facts of the accident is short. He had but two witnesses—himself and his wife. The plaintiff testified that while operating the tractor on May 8, 1940, he attempted to take a rock off the road where he was working, and had it propped up, but the prop slipped; that he could not let it down for fear of breaking his legs and in exerting himself he said he "put all the power to it I had and I felt something snap in my chest and I had a terrible pain there." He said that because of this straining on May 8, he "felt an awful pain, felt kind of sick to my stomach and dizzy;" he went home and could not sleep; his health has been poor ever since; he has pains in his heart, and nose bleed; that before that time he was "happy and had a lot of fun, enjoyed life," but that since that time "life isn't worth anything now;" that this 8th

day of May his health was good and he was strong, but that ever since that time he has been weak and that "these conditions have continued to exist" ever since he lifted the stone; that up until the 8th day of May he was in good health. His counsel asked him, "How was your health before that?" and he said, "Very good." He said further that his heart never bothered him before and that he had no nose bleeds before that time except when he "got popped on the nose;" that before this time his appetite was "very good" and he "was a very sound sleeper;" his nervous condition before that time was "very good," and his physical power before lifting this stone was "very good;" he was strong, but since that time he could not lift anything. He never had dizzy spells before this accident on May 8, 1940, and had no pains in his heart when lifting prior thereto, even when rolling stones weighing 500 pounds. In this respect it will be noted that on May 10, 1940, he applied to the bureau for compensation because of two broken ribs (Application #98593) and was allowed compensation therefor. As to work thereafter, he was asked,

"You say you went back to work and tried to work for two or three days after this incident?"
and answered,

"Yes, but that was in June."
His wife testified as follows:

"Q. Now since that time has he done any work?

"A. Well, you mean since the 8th day of May?

"Q. 1940?

"A. Well, he tried.

"Q. When did he try?

"A. Oh, it was in June, sometime about the 17th day of June I believe, he went back to work. He tried but he couldn't, he came back and he just said he couldn't work any more, and I could see that myself that he could not work any more."

Three doctors testified as to the effect the type of strain to which plaintiff said he was subjected on May 8, 1940, might have upon the heart condition the doctor found when he examined him some time later, but the real issue is whether the district court could determine the appeal as presented.

In the application #98593, where he claimed he broke two ribs, he said the accident occurred May 9, 1940. In his final report therein, made June 19, 1940, he said he ceased work May 9 at noon and returned to work June 17, 1940, at 7 a. m.

Because of his testimony in this case, wherein he said that on May 8, "I felt something snap in my chest," it is very evident there were not two separate accidents—one on May 8 when he felt something snap in his chest and did not work again until in June, and one on May 9, the subject of claim #98593, when he cracked two ribs and ceased to work at noon of May 9. If he did not work after May 8 until June, *he did not work on May 9 and break two ribs.* The bureau, in awarding him compensation, was not concerned with the exact date so much as with the accident.

There is nothing in the record showing the plaintiff ever filed an application with the bureau for compensation because of this alleged injury on the 8th of May, 1940, unless it be the one known as #98593. In the case at bar he attempts to make claim under this blanket application covering a period of almost three years, claiming a disease developed.

It is clear that plaintiff, in this application #100792, is attempting to show a heart condition, beginning, not in August, 1937, as he says in his application, but on May 8, 1940, the time of the accident set forth in his testimony in this case.

Section 396a3 provides: "It shall be the duty of the workmen's compensation bureau hereinafter created to disburse compensation from the North Dakota workmen's compensation fund to any employee subject to this act for *injury* arising in the course of employment." The plaintiff was such an employee as had a right to share in the fund.

There is a distinction in meaning between the word "injury" and the word "accident" within the workmen's compensation law. As we point out in Tweten v. North Dakota Workmen's Comp. Bureau, 69 ND 369, 380, 287 NW 304, 310, "The term 'injury' within the purview of that Act (our act) is broader in its coverage than the laws of many states." The injury is the result of the accident, and includes all the effects of the accident. Where an accident expresses itself in two or more results the sum total of these results is the injury for which he is

entitled to compensation. The injury is the state of facts which entitles the claimant to compensation. See Cooke v. Holland Furnace Co. 200 Mich 192, 166 NW 1013, LRA1918E, 552, 17 NCCA 153; Kostron v. American Parking Co. 227 Mo App 34, 45 SW(2d) 871; Fidelity Union Casualty Co. v. Koonce (Tex Civ App) 51 SW(2d) 777; Giguere v. E. B. & A. C. Whiting Co. 107 Vt 151, 177 A 313, 315, 98 ALR 196, 37 NCCA 732.

In the same accident an employee may lose a finger, have other bones broken, receive injuries to his head, etc. In allowing compensation, the bureau considers all of these features and awards him compensation for all as one *injury*.

Where an applicant is injured in two or more separate and distinct accidents he has the right to make application for each injury. The record shows plaintiff did this in his former dealings with the bureau. He had several accidents during the period set forth in the application involved here and the bureau allowed him in full for the injuries which resulted from each of these accidents.

The bureau is not limited to one effect of an accident or to those features which are discovered at the time it took jurisdiction and determined the applicant was an employee injured in the course of his employment. "An application once made to the Workmen's Compensation Bureau, if made within the time prescribed by statute, remains a continuing claim and the bureau has a continuing jurisdiction and may modify the award as changing conditions warrant. And this is so whether the bureau determines the injury to be temporary or permanent." Wallace v. North Dakota Workmen's Comp. Bureau et al. 69 ND 165, 284 NW 420; Bergstrand v. North Dakota Workmen's Comp. 69 ND 447, 287 NW 631; Gotchy v. North Dakota Workmen's Comp. Bureau, 49 ND 915, 194 NW 663.

In the exercise of this continuing jurisdiction the bureau may increase the compensation previously awarded. Dahl v. North Dakota Workmen's Comp. Bureau, 63 ND 327, 248 NW 273. See also Lillefjeld v. North Dakota Workmen's Comp. Bureau, 62 ND 388, 244 NW 36.

Claim #100792 depends on the alleged accident said to have occurred May 8, 1940. He had made application for compensation be-

cause of this May 8 injury, claim #98593, and he had received compensation therefor. The bureau therefore has a continuing jurisdiction over such application. If the application #100792—the basis for the action at issue—includes the accident of May 8, and the alleged condition is the result of the accident of May 8, 1940, then plaintiff's remedy is to ask the bureau to reopen that claim #98593 for the purpose of permitting him to show grounds for an increase in the allowance already made.

It is not the purpose of the statute, in the case of one accident, to require or permit an employee to separate the various classes of damage which he has received and make a separate application for each class. All are to be determined under one application.

Our statute places a bar upon the time when an injured employee may apply for compensation. Under the provisions of Sec. 396a15, the original claim for compensation must be made within sixty days after the injury; but "for any reasonable cause shown the bureau may allow original claims for compensation for disability or death to be made at any time within one year."

Section 396a18 provides that where an original claim has been filed in time, "the bureau may, at any time, on its own motion or on application, review the award, and, in accordance with the facts found on such review, may end, diminish, or increase the compensation previously awarded, or, if compensation has been refused or discontinued, award compensation."

Consequently, it is clear that where an application is made within the time required by statute the fact that the bureau may have allowed compensation based upon mere partial knowledge of the extent of the injury does not prevent the applicant from having the application reopened long after the time for filing original claims has passed. Otherwise, an injured employee might learn to his sorrow that while he had applied for and received compensation more or less trivial in the amount, because of minor injuries, yet later when it was found how serious was his injury he would have no recourse to the fund. Clearly, it was the intent of the law that where the bureau entertained jurisdiction it could at any time thereafter, as long as the applicant lived, reopen the hearing and allow additional compensation for matters unknown at the time the original award was made.

This claim #100792 cannot be considered an original application to the bureau for compensation, because of the injury received on May 8. He did not present any such claim to the bureau in his application, and he cannot do it now for the bureau would have no jurisdiction to pass upon it. See Pearce v. North Dakota Workmen's Comp. Bureau, 67 ND 512, 516, 274 NW 587, 590. This statutory provision is "a limitation upon the power of the bureau to allow claims for disability payable out of the fund." Bjorseth v. North Dakota Workmen's Comp. Bureau, 62 ND 623, 244 NW 515.

If the hearing is to be considered as an appeal from the decision of the bureau in refusing to allow compensation for a physical condition undisclosed at the time of previous hearings and now discovered, the sole jurisdiction of that matter is with the bureau. There is no appeal from its decision thereon. Lillefjeld v. North Dakota Workmen's Comp. Bureau, 62 ND 388, 244 NW 36.

The bureau denied this application #100792 on the ground that any disease which the plaintiff claimed was not caused by his employment. The testimony offered at the hearing before the bureau was not before the court on the appeal, so we assume that the matter was correctly decided by the bureau upon the evidence heard. Upon the appeal the plaintiff apparently abandoned that theory—in part at least— but he cannot be permitted now to seek additional compensation because of an accident received on May 8 which had not been presented to the bureau. Plaintiff cannot in effect begin a separate and distinct action. The district court has appellate jurisdiction only in workmen's compensation bureau cases, and then only in such matters as are allowed by the statute.

The evidence at the hearing on appeal, therefore, is confined to the record filed with the Court. See § 19, chap 240, Sess Laws of 1941. No record of the evidence before the bureau is here.

As pointed out heretofore, if the accident which happened on the 8th of May was the same accident for which the plaintiff made application #98593 for compensation, alleging that it occurred on May the 9th, then the bureau took jurisdiction, awarded compensation, has a continuing control thereover, and may at any time while the applicant lives award additional compensation if it finds that heretofore it had

not allowed the applicant the amount to which he would be entitled and the courts cannot review the determination.

If the accident which the plaintiff attempts to prove in the case at bar as having occurred on the 8th of May is not included in the application which was made for an alleged injury suffered on May 9, or any other application made, his application for compensation because of the injury on May 8 cannot be heard now, as that claim has never been presented to the bureau and it has never had the opportunity to pass thereon. Neither can it be heard by the bureau now upon a separate application, for more than two years have expired since the accident occurred. Therefore, the judgment is reversed and the proceeding dismissed.

MORRIS, Ch. J., and CHRISTIANSON, BURKE and NUESSLE, JJ., concur.